**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.**

**JTH TAX, LLC d/b/a LIBERTY TAX SERVICE**,

    Plaintiff,

v.

**RICHARD BROWDY, and**
**DISTINCTIVE TAX SPECIALISTS, LLC**,

    Defendants.

_____/

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff JTH Tax LLC, d/b/a Liberty Tax Service ("Liberty"), alleges for its Verified Complaint against Defendant Richard Browdy ("Browdy") and Distinctive Tax Specialists, LLC ("Distinctive Tax") (collectively "Defendants"), as follows:

**NATURE OF THE ACTION**

1. Browdy, a former Liberty franchisee, operated a Liberty Tax Service franchise at or about 8943 Taft Street, Pembroke Pines, FL 33024, using Liberty's confidential information and trade secrets pursuant to a written contract, the Franchise Agreement.

2. Browdy used Liberty's confidential information and trade secrets to solicit Liberty customers on behalf of Distinctive Tax Specialists, LLC in open and direct violation of his express promise to refrain from competing with Liberty within twenty-five miles of his former Liberty franchise office following the termination of his franchise agreement with Liberty.

3. If Browdy is not ordered to cease his unlawful competition, Liberty will continue to suffer irreparable harm to its brand and franchise system.

1

4. Liberty seeks (1) an immediate injunction prohibiting Browdy from competing with Liberty within twenty-five miles of his former Liberty franchise, (2) compensatory damages stemming from Browdy's breaches of contract and violations of common law; (3) statutory and punitive damages stemming from Browdy's violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*. ("DTSA"); (4) compensatory damages stemming from Distinctive Tax's tortious interference with the franchise agreement between Liberty and Browdy; (5) attorneys' fees and costs; (5) such other relief the Court deems necessary and just.

## THE PARTIES

5. Liberty is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, VA 23456.  For jurisdictional purposes, Liberty is a citizen of Canada because each of Liberty's members are citizens of Canada.

6. Browdy is a citizen of the State of Florida, with a last known address of 2857 Oak Park Circle, Davie, FL 33328.

7. Distinctive Tax Specialists, LLC is a Florida limited liability company with a principal place of business at 150 S Pine Island Rd, Suite 300, Fort Lauderdale, FL 33324-2665.

## JURSIDICTION AND VENUE

8. This Court has personal jurisdiction over Browdy because he is a natural person who is a citizen of the State of Florida.

9. The Court has personal jurisdiction over Distinctive Tax because it is a Florida limited liability company with a principal place of business in Florida, and each of its members are citizens of the State of Florida.

10. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Canada; Defendants are citizens of Florida;

and the amount in controversy exceeds $75,000.

11.     This action is properly venued in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Browdy is a resident and a substantial part of the events giving rise to Liberty's claims occurred within this District.

## FACTUAL BACKGROUND

12.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in New Jersey.

13.     Pursuant to the terms of its franchise agreements, Liberty discloses its trade secrets and confidential information, including its methods of operation, private customer information, and marketing strategies (collectively, "Confidential Information") to franchisees through its confidential and proprietary Operations Manual, training manuals, training programs, and in providing guidance and assistance to franchisees.

14.     Since its inception in 1997, Liberty has grown to be one of the largest tax preparation franchises in the United States.

15.     Liberty's busiest time of the year typically spans the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

**Browdy's Franchise Agreements**

16.     On or about September 15, 2014, Browdy entered into a franchise agreement with Liberty for territory known as FL196.  ("Franchise Agreement").  A copy of the Franchise Agreement for the FL196 is attached hereto as **Exhibit A**.

17.     Browdy operated Liberty offices at 8943 Taft St., Pembroke Pines, FL, 33204 pursuant to the Franchise Agreement.

18.     Pursuant to the Franchise Agreement, Liberty granted Browdy a license to use its

Confidential Information and trade secrets—including but not limited to client files, client information (such as names, phone numbers, social security numbers and other tax return information), operational methods, promotional plans marketing strategies, pricing structures, business strategies, training material and other proprietary trade secrets and know-how ("Confidential Information")— and to identify as a Liberty franchise, and provided Browdy with training in its operation, marketing, advertising, sales, and business systems.

19. Browdy also received a copy of Liberty's confidential operating, marketing, and advertising materials, including its confidential and proprietary Operations Manual containing Liberty's Confidential Information and trade secrets, which are not available to the public or to anyone who is not part of Liberty's business system.

20. Pursuant to Section 4(d) of the Franchise Agreement, Browdy agreed to pay monthly royalties in the amount of 14% of gross receipts subject to Minimum Royalties as set forth in detail in the said paragraph. Ex. A § 4(d).

21. Pursuant to Section 4(f) of Ex. A (Franchise Agreement), Browdy agreed to pay monthly advertising fees to Liberty in the amount of 5% of gross receipts. *Id*. § 4(f).

22. Pursuant to Sections 4(h) of Ex. A (Franchise Agreement), interest on all amounts due and owing by Browdy, Liberty compounds daily at a rate of 12% per annum. *Id*. at § 4(h).

23. In Section 9(d) of the Franchise Agreements, Browdy agreed to immediately pay all amounts due and owing to Liberty upon the termination. *Id*. at § 9(d).

24. Under Section 9 of the Franchise Agreements, Browdy agreed to the following actions immediately upon termination or expiration of the Franchise Agreement: (i) return Liberty's confidential Operations Manual; (g-h) deliver all customer lists, tax returns, files, and records to Liberty; (b-c) refrain from identify the business as a Liberty franchise and stop using

4

or disclosing Liberty's Confidential Information and trade secrets; and (k) adhere to all post-termination non-competition and non-solicitation covenants. *Id.* at §9.

25. Browdy also agreed under the Franchise Agreements "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty…" *Id*. at §10(f).

26. Browdy agreed under the Franchise Agreement "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest," agreed to "waive all defenses to the strict enforcement of Section 10," and agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under … Section 10." *Id*. at §10(h).

27. Pursuant to Section 12 of the Franchise Agreements, Browdy acknowledged that Liberty's Confidential Information was to be used only in connection with his Liberty franchise, and further agreed to never use or disclose the Confidential Information following the termination or expiration of the Franchise Agreements. *Id*. at §12(a) and (c).

28. Browdy personally guaranteed the Franchise Agreements. Ex. A § 26.

**Termination of the Franchise Agreement**

29. In or around January 2018, Liberty learned that Browdy had breached the Franchise Agreement by, among other things, abandoning his franchise and failing to pay debts owing to Liberty.

30. On or about January 26, 2018, Liberty notified Browdy of his multiple breaches and provided him with the opportunity to cure them ("Notice to Cure"). A copy of the Notices to Cure are attached hereto as **Exhibit B**.

31. Browdy failed to cure the breaches identified in the Notice to Cure. As such, Liberty terminated the Franchise Agreements on or about August 15, 2018. A copy of the termination

letter sent to Browdy ("Termination Letter") is attached hereto as **Exhibit C**.

32. The Termination Letter reminded Browdy of, among other things, his post-termination obligation to adhere to the provisions of his post-termination covenants not to compete and not to solicit. The Termination Letter further reminded Browdy that failure to adhere to the terms of the agreement would lead to "…legal proceeding to enforce these obligations and seek damages, costs, and expenses, including reasonable attorneys' fees incurred by Franchisor in seeking damages and/or in obtaining injunctive relief…" due to the breach of the agreement.

**Browdy's Promissory Note**

33. On or about September 14, 2014 Browdy entered into a promissory note in favor of Liberty in the principal amount of $32,000 ("Note"). A copy of the Note is attached hereto as **Exhibit D**.

34. Interest accrues on the principal Note amount at a rate of 12% per annum.

35. The Note provides that Liberty is entitled to costs and attorneys' fees incurred in connection with enforcing the Note.

**Browdy's Post-Termination Breaches of the Franchise Agreement**

36. Unbeknownst to Liberty, Browdy began operating his competing tax preparation business, Distinctive Tax, just over 5 miles away from his former Liberty franchise, at 150 Pine Island Rd., Suite 300, Ft. Lauderdale, FL 33324-2665.

37. Browdy advertised his new business on his Facebook account at https://www.facebook.com/richard.browdy, and acknowledged that he was operating his competing business as of January 24, 2018, prior to receiving Liberty's Notices to Cure, and nearly 7 months prior to the Termination of his franchise (**Ex. C**).

38. Browdy continued to operate Distinctive Tax Specialists in violation of the terms

of his Franchise Agreement. Distinctive Tax Specialists remains a viable business and maintains a website at https://taxadvisorbroward.com.

## COUNT I
*Breach of the Franchise Agreements*
*(Equitable Claim)*

39. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

40. The Franchise Agreements are valid and enforceable.

41. Liberty has performed every obligation and condition required under the Franchise Agreements.

42. Browdy agreed under the Franchise Agreements to, *inter alia*, (a) return Liberty's confidential Operations Manual to Liberty following the termination of the Franchise agreement; (b) not to use or disclose Liberty's Confidential Information, including client contact information, for any purpose other than the business of Liberty; and (c) refrain from offering tax preparation services and soliciting Liberty's customers within 25 miles of his former Liberty office.

43. Browdy's post-termination obligations survive termination of the Franchise Agreements.

44. Browdy agreed to comply with all post-termination obligations under the Franchise Agreements.

45. Browdy has breached the Franchise Agreements by operating Distinctive Tax within 25 miles of his former Liberty franchise, and by using Liberty's Confidential Information to do so.

46. Browdy's breaches of the Franchise Agreements were and are material.

47. Upon information and belief, these breaches have caused and will continue to cause

confusion in the minds of consumers between the services of Liberty and Distinctive Tax, and pose a threat to the confidentiality and value of Liberty's Confidential Information.

48. Liberty has been and will be irreparably harmed by Browdy's actions, and monetary damages are an insufficient remedy in that it can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Browdy's violations.

49. Unless his wrongful conduct is enjoined, Browdy will continue to breach his obligations by continuing to breach the non-competition and non-solicitation covenants, and continuing to disclose and use Liberty's Confidential Information.

## COUNT II
### *Breach of Franchise Agreement*
### *(Monetary Claim)*

50. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

51. The Franchise Agreement is valid and enforceable.

52. The Note is valid and enforceable.

53. Liberty has performed every obligation and condition required under the Franchise Agreement.

54. Liberty has performed every obligation and condition required under the Note.

55. Browdy agreed under the Franchise Agreement to, *inter alia*, (a) pay to Liberty all amounts owing to Liberty, and (b) to refrain from offering tax preparation services within 25 miles of his former Liberty franchise following termination of the Franchise Agreement. **Exhibit A, §9(c)**.

56. Browdy agreed under the Note to pay the outstanding balance due thereunder.

57. Browdy's post-termination obligations survive termination of the Franchise Agreements.

58. Browdy agreed to comply with all post-termination obligations under the Franchise Agreements.

59. Browdy breached the Franchise Agreements by failing to pay amounts due and owing under the Note, as well as by failing to pay outstanding accounts receivable balances owed to Liberty.

60. As of July 26, 2018, Browdy owed Liberty $78,161.54 plus interest, costs and fees.

61. Browdy's breaches of the Franchise Agreement are material.

62. As a direct and proximate result of the foregoing breaches, Liberty has incurred, and will continue to incur, substantial losses in an amount to be proven at trial.

## **COUNT III**
### *Violation of the Defend Trade Secrets Act of 2016*

63. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

64. The DTSA provides a private civil cause of action for misappropriation of a trade secret that is related to a product or service.

65. Liberty owns numerous trade secrets, including but not limited to, client lists and files, as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded trade secrets and Confidential Information (collectively, "Trade Secrets").

66. The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

67. The Trade Secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of the franchised business pursuant to a franchise agreement.

68. Liberty's franchisees are licensed to use the Trade Secrets only pursuant to the protective terms of Liberty's franchise agreements, and only in connection with the operation of a Liberty franchise.

69. Liberty disclosed the Trade Secrets to Browdy pursuant to the terms of the Franchise Agreement and for the sole purpose of using that information to operate a Liberty franchise.

70. Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining a competitive advantage, including, among other things (a) requiring franchisees to agree to never use the Trade Secrets for any purpose other than operating a Liberty franchise, (b) requiring franchisees to return the confidential Operations Manual and deliver the Confidential Information to Liberty immediately upon termination or expiration of the Franchise Agreement, and (c) enforcing Liberty's interest in its trade secrets by initiating legal recourse against those who misappropriate its trade secrets.

71. Pursuant to Section 9(i) of the Franchise Agreements, Browdy agreed that upon termination of the Franchise Agreement, he would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and that he would return all customer information and Liberty's confidential Operations Manual to Liberty upon termination.

72. Breaching those promises, Browdy failed to return Liberty's Confidential Information and Operations Manual to Liberty, and instead has used the Trade Secrets to secure a pecuniary benefit for himself and for Distinctive Tax.

73. Browdy intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's Trade Secrets for his own economic benefit and with the intention and knowledge that his conduct would irreparably injure Liberty's goodwill and

reputation.

74. Distinctive Tax used Liberty's Trade Secrets without Liberty's permission or authorization, with knowledge that it did not have permission or authorization to use said Trade Secrets. Distinctive Tax did so for its own economic benefit and with the knowledge that its conduct would irreparably injure Liberty's goodwill and reputation.

75. As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

76. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's Trade Secrets should be enjoined from further disclosure or use of Liberty's Trade Secrets.

77. Defendants' conduct in misappropriating the Trade Secrets was and continues to be willful and malicious - warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

### COUNT IV
*Unjust Enrichment*

78. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

79. If this Court does not award judgment against Browdy and in favor of Liberty for breach of contract, Liberty is entitled to damages under the theory of unjust enrichment.

80. Defendants have been enriched by their failure to pay all sums due and owing to Liberty under the Franchise Agreement.

81. Defendants have been enriched by their post-termination breaches of the Franchise Agreement, including, but not limited to their improper operation of a competing business within

25 miles of Browdy's former Liberty franchise location within 2 years after the termination of the Franchise Agreement.

82. Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendants are liable, in association with Defendant's unjust enrichment.

## COUNT V
### *Unfair Competition*

83. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

84. Defendants are improperly using and will continue to use Liberty's Confidential Information and Trade Secrets in furtherance of their operation of Distinctive Tax, which competes directly with Liberty within twenty-five miles of Browdy's former Liberty franchise.

85. Through their actions, Defendants are intentionally attempting to deceive Liberty's current and prospective customers for their business gain.

86. As a direct and proximate result of Defendants' unlawful actions, Liberty has suffered and will continue to suffer irreparable injury and is entitled to injunctive relief and monetary damages in an amount to be determined at trial.

## COUNT VI
### *Tortious Interference with Franchise Agreements*

87. Liberty repeats and re-alleges Paragraphs 1 through 38 as it fully sets forth herein.

88. The Franchise Agreements are valid and enforceable.

89. Upon information and belief, at all relevant times Distinctive Tax had knowledge of the existence of the Franchise Agreements and their terms.

90. Upon information and belief, Distinctive Tax intentionally interfered with the Franchise Agreements by facilitating Browdy's unlawful competition within twenty-five miles of his former Liberty franchise.

91. As a direct and proximate result of Distinctive Tax's interference with the Franchise Agreements, Browdy breached the Franchise Agreements by, *inter alia*, failing to maintain the absolute confidentiality of the Confidential Information; using the Confidential Information in connection with the services of Distinctive Tax; interfering with Liberty's business advantages; damaging the Liberty brand and the integrity of Liberty's franchise system; and unlawfully competing with Liberty within twenty-five miles of his former Liberty franchise.

92. As a direct and proximate result of Distinctive Tax's interference with the Franchise Agreements, Liberty has been damaged.

93. Liberty will continue to suffer irreparable harm unless the Court enjoins Distinctive Tax from further interference with the Franchise Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1. For the following injunctive relief:

    A. Enjoin Browdy from soliciting Liberty's customers within twenty-five miles of his former Liberty franchise for two years following the entry of any injunction;

    B. Enjoin Browdy from preparing or electronically filing income tax returns within twenty-five miles of the Territory for a period of two years following the entry of any injunction;

    C. Order Browdy to return to Liberty, at his own expense, all printed materials provided by Liberty to Browdy, including, without limitation, Liberty's confidential Operations Manual and all customer lists, advertising material,

     stationery and printed forms bearing the Marks and/or Liberty's Confidential Information; and

  D. Enjoin Defendants from using Liberty's Confidential Information and Trade Secrets in perpetuity.

2. For judgment against Browdy in the amount of at least $78,161.54 plus pre-judgment and post-judgment interest, for amounts due and owing by Browdy to Liberty pursuant to Browdy's outstanding accounts receivable balance;

3. For compensatory and, if applicable, punitive damages arising from Defendants' common law violations;

4. For a monetary award against Browdy for Liberty's reasonable attorneys' fees and costs, in an amount to be proven at trial;

5. For pre-judgment and post-judgment interest; and

6. For such other relief as the Court deems just and appropriate.

Dated: August 12, 2022     Respectfully submitted,

            *s/ Andrew R. Schindler*
            **ANDREW R. SCHINDLER**
            FBN 124845
            *aschindler@grsm.com*

            **GORDON REES SCULLY MANSUKHANI LLP**
            100 SE 2nd Street, Suite 3900
            Miami, Florida 33131
            Tel: (305) 428-5329
            *Attorneys for Plaintiff*

**VERIFICATION**

Brian Panelo, being duly sworn, deposes and says:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

Dated: May  15  , 2022

DocuSigned by:
1D8D834CFCF54A0...

Brian Panelo
Regional Director for JTH Tax LLC